# Weir's Estate.

*Husband and wife—Loan or gift—Auditor's findings.*

An auditor's findings that moneys paid by a husband for the improvement of his wife's real estate were paid as a loan to the wife and not as a gift, will be sustained, where the evidence tends to show that the moneys were paid to a contractor doing work on the real estate, that the husband and wife had no children, and that declarations of the wife to other parties and statements to her husband before her death, showed that the wife regarded the transaction as a loan, and not as a gift.

Argued April 15, 1918.   Appeal, No. 86, April T., 1918, by Ella Marshall et al., from decree of O. C. Washington Co., Aug. T., 1916, No. 5, dismissing exceptions to adjudication in Estate of Sarah J. Weir, deceased.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Exceptions to adjudication.

MCILVAINE, P. J., filed the following opinion:

Sarah J. Weir, the wife of Morris R. Weir, died testate on July 17, 1915, and her will was duly probated and letters testamentary issued.   The accountant having filed his account and the same being confirmed, an auditor was appointed to ascertain claims against the estate and to make distribution.   Among other claimants was Morris R. Weir, the husband, his claim being for money which he expended for and in behalf of his wife, Sarah J. Weir, during her lifetime.

The auditor in disposing of Morris R. Weir's claim, found that he was entitled to receive from the estate of his wife, Sarah J. Weir, the sum of $6,080.85 paid on the contract for building a house on the lot of the said Sarah J. Weir in the Borough of Washington, and for digging a cistern and grading on said lot, and drilling a well on said lot and putting in a curb on said lot, and in-

Opinion of Court below. [70 Pa. Superior Ct.

suring the house. He also found on the part of the legatees and devisees of Sarah J. Weir, that the said Sarah J. Weir in her lifetime paid to the First National Bank of Washington a note of M. R. Weir as a credit amounting to $2,000.

The following claims of M. R. Weir were rejected by the auditor:

| | |
|---|---|
| For building a stable, .............. | $555.96 |
| For lumber for house, .............. | 91.56 |
| For lumber for stable, .............. | 114.30 |
| For taxes paid from 1906 to 1914, .... | 884.69 |
| For money paid out on lot, .......... | 805.00 |

In disposing of these claims, we find this comment in the auditor's report:

"The auditor cannot find any contract, request or promise to pay by either party in relation thereto or anything to indicate what was the intention of the parties in regard to the same—(these claims). They are therefore not allowed."

Morris R. Weir filed exceptions to the auditor's report for disallowing these claims, and the legatees and devisees under Sarah J. Weir filed exceptions to the auditor's finding that the $6,080.85 expended by Morris R. Weir in improving the real estate of his wife was a debt and not a gift.

There is no doubt that on June 3, 1907, Sarah J. Weir owned and held the title to a lot of ground in Washington Borough which was her own separate estate, and that she had other property which she held in her own right that was a legitimate basis for a credit to improve said lot; and further, that on the last named date she with her husband entered into a written contract with J. M. Ullom's Sons for the erection of a brick veneered dwelling house on her said lot on the corner of Donnan and Hallam avenues, the contract price for the erection of which without any extras was $6,943. Nor can there be any doubt that the husband, Morris R. Weir, paid $6,-080.85, the amount of his claim allowed by the auditor,

149, (1918).]        Opinion of Court below.

on and toward the building of this house and improving this lot.

The payment of this money by him can be viewed in two ways. First, as a gift of the money by him to his wife to build a home for him and his wife upon her lot. Second, as a loan of the money to his wife, to be repaid at his death or at the death of his wife when the marital relation would be dissolved, thus making him a creditor and she a debtor.

The auditor has found as a question of law that the presumption is that the payment of the money by the husband for the use and benefit of his wife (and incidentally himself) was a gift to her and that the burden was on Morris R. Weir to show that it was not a gift but that the relation of debtor and creditor was created between him and his wife at the time of the respective transactions.

The auditor has found as to some of the claims of Morris R. Weir hereinbefore referred to, that there was no contract, request or promise to pay by either party in relation to these claims or anything to indicate what was the intention of the parties in regard to the same, and that therefore the presumption that it was a gift should prevail as to these claims.

As to the claim for $6,080.85 consisting of the items hereinbefore given, the auditor found that Mr. Weir had signed the contract with his wife and that so far as Ullom was concerned he was compelled to pay the money that he did pay to him. He found further that he did pay this money to Ullom at the request of Mrs. Weir, his wife, and further, that she afterwards promised to pay him back, and upon these facts he found that the relation of debtor and creditor was created between the husband and wife, and this claim was allowed (of course subject to the credit of $2,000 which he had previously found was paid by Mrs. Weir on Morris R. Weir's note as a credit).

In disposing of the exceptions filed to the auditor's report two questions arise: First, did the auditor err in

disposing of any question of law? Second, did he manifestly err in disposing of any question of fact?

The auditor, in passing upon the payments by Morris R. Weir for and in behalf of his wife on the building contract, held that the presumption was that he was making a gift to her by reason of the fact that he was her husband and that they as husband and wife would occupy the building being erected as a home until they should be separated by death. In so holding we think that the auditor was right, and that he followed the ruling of the Supreme Court as found in Johnston v. Johnston, 31 Pa. 450, and Gleghorne v. Gleghorne, 118 Pa. 383.

The second question for our decision is as to the auditor's finding of facts. The rule in cases of this kind is the same as in a motion by the defendant for judgment non obstante veredicto in the Common Pleas where the verdict is in favor of the plaintiff. That is, that the court will not reverse the auditor simply because the judge presiding would not have found the same way that the auditor found if the case had been originally presented before him, any more than he would grant a new trial because the jury may have found differently from what he would have found. The real question is, is there any evidence in this proceeding to sustain the finding of the auditor on questions of fact. If there is, then the court ought not to reverse him. It is only where there is manifest error in findings of fact that an auditor is reversed.

Turning then to the testimony in this case, can we find circumstances proven which would indicate that the relation of debtor and creditor existed between Morris R. Weir and his wife, Sarah J. Weir, so as to allow the husband at the death of his wife to reclaim the money which the auditor found that he paid as a creditor? We think we can. In the first place, the execution of the contract with Ullom would make the husband and wife joint debtors and would not indicate that he was to make a gift to his wife of the money necessary to pay for the

149, (1918).]          Opinion of Court below.

house which they contracted to have erected. Second, it was a fact that they had no children, and no presumption would arise that the husband was giving the money to his wife to improve property which at their death would descend to their children in whom they both would be interested. Third, declarations of Mrs. Weir were made during her lifetime which were only consistent with the theory that they had an understanding between them that the relation existing was that of debtor and creditor and not that of donor and donee. Fourth, promises were made by Mrs. Weir to her husband during her lifetime that were only consistent with the theory that he was her creditor and she his debtor for the money that he had paid for the erection of the house, she having a separate estate of her own. An auditor, like a jury, in arriving at his conclusion has a right to make fair and logical interferences from facts proven and having seen the witnesses his inferences are binding upon the court unless they are manifestly erroneous. In this case we are not satisfied that the auditor made a manifest mistake in finding as to this $6,080.85 that Morris R. Weir did not voluntarily pay it, but was compelled to pay it and that he paid it at the request of Mrs. Weir, and that she voluntarily promised to pay him back, and also in finding that no contract as debtor and creditor existed between them as to the other claims disallowed. And therefore, all the exceptions in this case should be overruled, unless it be the second exception filed by the devisees and legatees of Sarah J. Weir, to which we now wish to refer: Gregg Est., 252 Pa. 302.

This exception is in these words:

"The auditor erred in refusing to find that of the sums advanced by Morris R. Weir for the improvement of real estate owned by Sarah J. Weir, the sum of two thousand dollars was actually repaid by Sarah J. Weir on the 3d day of October, 1908, when she paid his note for that amount at the First National Bank of Washington."

Turning to the auditor's report we find these words:

"On the part of the legatees and devisees it was shown that S. J. Weir paid to the First National Bank of Washington, Pa., a note of M. R. Weir of $2,000 as a credit."

If this finding of the auditor is to stand, then this exception was not necessary. If, however, there is a contradictory finding in the auditor's report growing out of the fact that this $2,000 paid by Sarah J. Weir on M. R. Weir's note is coupled with claims of M. R. Weir for building stable, etc., then we find that the first finding of the auditor should prevail. That is, that this $2,000 ought to be credited on the claim allowed by the auditor. It is evident that the note which was paid was part of the general transaction between the two parties in reference to the building of this house, and she was really discharging an obligation given by her husband for her benefit.

And now, January 6, 1917, the exceptions to the auditor's report came on to be heard and were argued by counsel, whereupon, it is ordered, adjudged and decreed that said exceptions be and the same are hereby overruled, except that the $2,000 paid by Mrs. Sarah J. Weir on a note of M. R. Weir shall be taken as a credit on "M. R. Weir's claim on house of $6,080.85," making his net claim $4,080.85, to be paid out of any money that may hereafter be realized by the executor from the sale of other property of the said testatrix.

### SUGGESTION.

Before the auditor and at the argument of the exceptions taken to his report, both the counsel for Morris R. Weir and for the residuary legatees took the position that the money which Morris R. Weir paid was either a gift or a loan to Sarah J. Weir, and on that theory the auditor disposed of the case; and of the claims of Morris R. Weir, amounting to something over $8,000, he allowed $6,080.85, subject to the credit of the $2,000 which Sarah J. Weir paid in discharge of a note which Morris R. Weir gave in order to get money to pay on the contract price for building the house and which is included

in the $6,080.85 which the auditor found was an indebtedness of Sarah J. Weir paid by Morris R. Weir at her request.

Another theory could be adopted in regard to this whole transaction which is not unreasonable from the circumstances that are made to appear in the testimony, and that is, that this lot was bought for the joint use of Sarah J. Weir and her husband while they both lived, and also that the house was built and the lot improved for their joint use and that they were joint debtors, each required to pay one-half of the expense of buying and improving the lot, and that the title in Sarah J. Weir was held while they both lived for their joint use. Since the Act of 1893 was passed, and Mr. and Mrs. Weir, each having a separate estate and both having signed the agreement with Ullom to build the house, the presumption of law would be that they were improving this lot for their joint benefit. And the title being in Mrs. Weir and Mr. Weir having paid the purchase-money, it could be well inferred from their jointly building the house that the lot was also held while they both lived for their joint use. If this theory of the transaction is correct, then each of the parties would be in equity required to contribute one-half of the expense of buying and improving the lot from their respective estates, which, according to the figures of the auditor, was something over $8,000, making the share of each something over $4,000. The manner in which the auditor has disposed of the case makes each of the parties pay substantially $4,000, and he comes out about the same place that would be arrived at had this second theory of the case been adopted.

Now, January 30, 1917, appellants, by their attorney, except to foregoing opinion and decree and exception noted and bill sealed.

On exceptions to the adjudication McILVAINE, P. J., filed the following opinion:

Morris R. Weir and his wife, Sarah J. Weir, improved a lot which had been previously bought and the title

Opinion of Court below.  [70 Pa. Superior Ct.

taken in the name of Sarah J. Weir, the wife. After the wife died, Morris R. Weir, the husband, presented a claim against his wife's estate for money expended by him to improve the lot.

The auditor has found as a fact that part of these improvements were made under a written article of agreement which the husband and wife executed with one J. M. Ullom Sons, and that part of them were made by the husband himself without any contract with other parties in which the wife had joined, or in other words, he made these latter improvements on his own initiative. He finds also that the improvements which were made under the contract with Ullom and which were paid for by Morris R. Weir amounted to $6,080.85. He further finds that the improvements which Morris R. Weir apparently made on his own initiative, or at least without a contract in which the wife had joined, amounted to $2,451.47. The auditor also finds that the estate of Sarah J. Weir is indebted to Morris R. Weir in the sum of $6,080.85, because that money was expended by him while the relation between him and his wife was that of debtor and creditor. He also finds that the estate of Sarah J. Weir is not indebted to him in the additional sum of $2,451.47, because the different sums of money that he expended for the improvement of the property, aggregating this total of $2,451.47, were presumably a gift to his wife. The auditor further finds that the wife at one time paid to the First National Bank the amount of a note which Morris R. Weir gave to the First National Bank, the sum of $2,000, and that there is no evidence to indicate what was the intention of the parties at the time she paid the same; but he also finds that the $2,000 paid on this note should be a credit on the wife's indebtedness to her husband. The contention of the exceptant to our former adjudication is that this $2,000 which the wife paid to the First National Bank should be a credit upon the $2,451.47 which Morris R. Weir gave to his wife or which he expended voluntarily in improving her prop-

149, (1918).] Opinion of Court below—Arguments.

erty.   We think this contention cannot in reason be
maintained.   The auditor having found that it "was
shown" (presumably by the evidence) that Sarah J.
Weir paid to the First National Bank of Washington,
Pa., a note of Morris R. Weir, as a credit, it would be
illogical to say that it was a credit upon a gift which
the husband had made to her.   The clear inference is
that it was a credit upon an indebtedness of hers to her
husband which the auditor has found was $6,080.85.
The evidence also shows that in this $6,080.85 was in-
cluded the proceeds of this very note which Morris R.
Weir gave to the First National Bank; and if on the
credit side of his account against her he was entitled to
place the proceeds of that note, she surely in stating her
credits against him should have credit for the $2,000 which
wiped out this note which he owed to the bank and
would reduce the actual indebtedness of her estate to
him to $4,080.85.

We are, therefore, of the opinion that the exceptions
to the adjudication of the court should be overruled, and
that the decree made by the court in disposing of the
exceptions to the auditor's report should stand as it was
originally made and the same is so ordered.

*Error assigned* was decree dismissing exceptions to
adjudications.

*Andrew M. Linn,* for appellants.—Between wife and
husband there could be no presumption of a promise to
pay sums paid by the husband for the improvement of
the wife's property, on the contrary the presumption is
that any sums paid by the husband were so paid as
gifts to the wife, and that presumption can be overcome
only by proof that is full, clear and unequivocal: Ear-
nest's App., 106 Pa. 310; Bear v. Bear, 33 Pa. 525;
Johnston v. Johnston, 31 Pa. 450; Gleghorne v. Gleg-
horne, 118 Pa. 383.

*Clyde W. Hufford,* for appellee.—In support of the

Arguments—Opinion of the Court. [70 Pa. Superior Ct.
appellee's contention the following cases are cited:
Spott's Est., 156 Pa. 281; Dennis v. Grove, 4 Pa. Superior Ct. 485; Gregg's Est., 252 Pa. 302.

,PER CURIAM, July 10, 1918: ·

The opinion of the court below in disposing of the exception to the auditor's report, and of the exception filed
to the adjudication, satisfies us that there is no reversible error in this record.

The judgment is affirmed.

---

# Clayton v. Hunter, Appellant.

*Partnership—Admission as to partnership—Denial of partnership
—Amendment—Refusal of amendment—Practice, C. P.*

Where a suit is brought against a single defendant as a surviving
partner of a partnership which was alleged to have consisted of two
members, and the defendant admits the partnership in his answer,
the court cannot be charged with error in refusing leave to amend
by striking·out the admission, if the defendant does not also ask to
amend by inserting a specific denial of the partnership. In such a
case the refusal of the court to allow defendant to amend harmed
him nothing, as the partnership being alleged by the plaintiff, it is
deemed to be admitted by the defendant unless specifically denied.

*Partnership—Partnership for single purpose—Mistake in delivery of goods—Evidence.*

In an action against a survivor of two partners for goods sold
and delivered, it appeared that the defendant and the deceased partner had in. the latter's lifetime entered into a special partnership
for the purpose of building a house. The deceased partner was
also engaged in building other houses in which the defendant was
not interested. The goods were charged to the deceased partner, and
were delivered to the house in which the defendant was interested.
*Held,* that the defendant might prove that the goods were indeed
delivered to the house in which he was interested, but that there was
a mistake made in so doing, and that they were not intended to be
used there, and were afterwards removed to another house in which
the defendant had no interest.

In such a case the books of original entry against the deceased